```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                    CASE NO.  21-cr-20566-DLG


UNITED STATES OF AMERICA,

            Plaintiff,

   vs.
                                        Miami, Florida
JAROSLAVA RUIZ,                         October 26, 2022
                                        Pages 1-17
            Defendant.
_____

              TRANSCRIPT OF SENTENCING HEARING
           BEFORE THE HONORABLE DONALD L. GRAHAM
            SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:
FOR THE PLAINTIFF:
                       United States Department of Justice
                       Fraud Section, Criminal Division
                       BY:  EMILY GURSKIS, A.U.S.A.
                       1400 New York Avenue, N.W.
                       Bond Building, 8th Floor
                       Washington, DC 20005

                       United States Attorney's Office
                       BY:  GABRIELLE RAEMY CHAREST-TURKEN,
                       A.U.S.A.
                       99 Northeast Fourth Street
                       Miami, Florida 33132

FOR THE DEFENDANT:
                       Quintero Broche, P.A.
                       BY:  FRANK QUINTERO, ESQ.
                       75 Valencia Avenue
                       Suite 800
                       Coral Gables, Florida 33134

REPORTED BY:           DAWN M. SAVINO, R.P.R., C.R.R.
                       Official Federal Court Stenographer
                       400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
                       Telephone:  305-523-5598
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

| | | |
|---|---|---|
| 2:03 PM | 1 | (Court called to order) |
| 2:06 PM | 2 | THE COURT:  Good afternoon, everyone.  Be seated |
| 2:06 PM | 3 | please. |
| 2:06 PM | 4 | COURTROOM DEPUTY:  Case USA versus Jaroslava Ruiz, case |
| 2:06 PM | 5 | number 21-cr-20566-Graham. |
| 2:06 PM | 6 | If we can please have counsel's appearance, starting |
| 2:06 PM | 7 | with the Government. |
| 2:06 PM | 8 | MS. GURSKIS:  Good afternoon, Your Honor.  Emily |
| 2:06 PM | 9 | Gurskis on behalf of the United States, and to my right at |
| 2:06 PM | 10 | counsel's table is Asset Forfeiture Assistant United States |
| 2:07 PM | 11 | Attorney Raemy Charest-Turken and Special Agent Mark George with |
| 2:07 PM | 12 | the Federal Bureau of Investigation who is one of the case |
| 2:07 PM | 13 | agents on this case. |
| 2:07 PM | 14 | THE COURT:  Good afternoon.  And I do not see counsel |
| 2:07 PM | 15 | for the Defendant. |
| 2:07 PM | 16 | Ms. Jaroslava Ruiz is present.  Good afternoon, Ms. |
| 2:07 PM | 17 | Ruiz. |
| 2:07 PM | 18 | THE DEFENDANT:  (Through Spanish Interpreter) Good |
| 2:07 PM | 19 | afternoon. |
| 2:07 PM | 20 | THE COURT:  I'll be with you in just a moment. |
| 2:07 PM | 21 | And from the Probation Office? |
| 2:07 PM | 22 | PROBATION OFFICER:  Good afternoon, Your Honor. |
| 2:07 PM | 23 | Officer Valdez with Probation. |
| 2:07 PM | 24 | THE COURT:  Thank you.  Good afternoon. |
| 2:07 PM | 25 | So ladies and gentlemen, this case has been an issue |

|  |  |  |
|---|---|---|
| 2:07 PM | 1 | since the beginning with defense counsel, and I'm not exactly |
| 2:07 PM | 2 | sure what the problem happens to be.  This case was scheduled |
| 2:08 PM | 3 | for sentencing over two months ago, and this Court had issues |
| 2:08 PM | 4 | with the defense attorney previously.  This is a matter of |
| 2:08 PM | 5 | record.  Frankly, I was concerned with defense counsel's |
| 2:08 PM | 6 | involvement in this case, and of course the defense counsel is |
| 2:08 PM | 7 | Mr. Benjamin Buck, B U C K, who has offices in Tampa. |
| 2:08 PM | 8 | The record clearly establishes many of the prior issues |
| 2:09 PM | 9 | this Court had with Mr. Buck.  On yesterday, this office, my |
| 2:09 PM | 10 | office, my chambers, received a motion for continuance, which is |
| 2:09 PM | 11 | very odd.  Who files a motion for continuance when a case has |
| 2:09 PM | 12 | been set for sentencing for months the day before the sentencing |
| 2:09 PM | 13 | hearing?  We don't change dates, especially a motion for |
| 2:09 PM | 14 | continuance the day before.  The Marshals are made aware, the |
| 2:09 PM | 15 | interpreters, the court reporter, the clerk's office, the US |
| 2:09 PM | 16 | Attorney's Office, all of these people, the court security |
| 2:10 PM | 17 | officer, we all assemble for a hearing that's scheduled months |
| 2:10 PM | 18 | in advance.  So to get a motion to continue the day before is |
| 2:10 PM | 19 | not the way an attorney should practice.  So, of course, this |
| 2:10 PM | 20 | Court immediately denied that motion, and the matter is still |
| 2:10 PM | 21 | scheduled to commence today, and the prior motion was a motion |
| 2:10 PM | 22 | to withdraw.  So who grants a motion to withdraw the day before |
| 2:11 PM | 23 | a scheduled sentencing?  I find that very odd.  And as I stated, |
| 2:11 PM | 24 | that motion was denied.  And then I come in this morning and |
| 2:11 PM | 25 | find out that about 5:00 yesterday afternoon slash evening |

```
2:11 PM   1   there's a motion to continue from Mr. Buck where in he is
2:11 PM   2   stating that the family has made it clear that he is unwanted
2:11 PM   3   and he has a conflict with a case in Hamilton County.
2:11 PM   4   Surprising.  And, of course, that motion was denied.  Included
2:11 PM   5   in the order it stated that if you don't appear, this Court is
2:11 PM   6   going to issue a show cause order for contempt.  And the record
2:12 PM   7   is clear, Mr. Buck is not present.
2:12 PM   8              Now, the Court has received a number of letters on
2:12 PM   9   behalf of Ms. Ruiz.  I have received a letter from Katherine
2:12 PM  10   Ruiz, the daughter of the defendant; a letter from Ms. Ruiz as
2:12 PM  11   well, and a letter from Greta Benitez who is a physician, also
2:12 PM  12   the daughter of Ms. Ruiz.  And there are a number of allegations
2:12 PM  13   about Mr. Buck included in the letters from Ms. Katherine Ruiz,
2:13 PM  14   and as well from Dr. Greta Benitez, as I stated, the daughters
2:13 PM  15   of Ms. Ruiz.  And there are allegations from those individuals
2:13 PM  16   about Mr. Buck's handling and conduct in the case.  Of course I
2:13 PM  17   don't consider letters from nonparties with respect to
2:13 PM  18   representation of Ms. Ruiz.  Ms. Ruiz is the one who is
2:13 PM  19   represented by an attorney, and the Court has received no
2:13 PM  20   complaints from Ms. Ruiz.  In fact, in a prior hearing, because
2:13 PM  21   of my concern about Mr. Buck's performance, I specifically asked
2:13 PM  22   Ms. Ruiz if she wanted Mr. Buck to represent her because frankly
2:14 PM  23   I was concerned, and Ms. Ruiz stated that she had no problems,
2:14 PM  24   at least she didn't express any problems, and she wanted to
2:14 PM  25   continue with Mr. Buck who represented her during the trial.
```

```
2:14 PM    1    And so as I recounted earlier, these issues with Mr. Buck have
2:14 PM    2    resurfaced.
2:14 PM    3            I should point out there was a prior hearing before the
2:14 PM    4    trial that Mr. Buck didn't appear for and in that instance,
2:14 PM    5    Mr. Buck alleged that he had a conflict and he had a trial.  And
2:14 PM    6    as a matter of fact, we inquired and found out that this alleged
2:14 PM    7    trial was not on the date that he was due here, that case
2:14 PM    8    settled the day prior, so there was no reason for him not to be
2:15 PM    9    here for that scheduled hearing.
2:15 PM   10            In any event, the question now is whether Ms. Ruiz
2:15 PM   11    wants to continue with the services of Mr. Buck.  And I'll have
2:15 PM   12    to make a second inquiry as I did previously, Ms. Ruiz, you have
2:15 PM   13    been represented by Mr. Buck and the question is do you want to
2:15 PM   14    persist with Mr. Buck representing you.  I asked this question
2:15 PM   15    at a hearing months ago, and I feel compelled that I have to ask
2:15 PM   16    you again because of these recent acts, and of course based on
2:15 PM   17    his failure to appear.  Is it your desire to be represented by
2:15 PM   18    Mr. Buck, Ms. Ruiz?
2:16 PM   19            THE DEFENDANT:  Good afternoon, Your Honor.
2:16 PM   20            THE COURT:  Good afternoon.
2:16 PM   21            THE DEFENDANT:  I would like to say to you that when
2:16 PM   22    you asked me that question, it was a little bit late because by
2:16 PM   23    that time my entire family, and myself, we had already paid the
2:16 PM   24    money that he had asked us for, and I did not have the money to
2:16 PM   25    pay for another attorney and that is the reason why my response
```

2:17 PM  1   was yes.  And so those problems had persisted until the day
2:17 PM  2   before the trial, and he was trying to be present for the trial
2:17 PM  3   and after that, the gentleman was paid his money.  After the
2:17 PM  4   trial ended, during the first days of August we were waiting for
2:17 PM  5   his response for him to get in touch with me.
2:17 PM  6           THE COURT:  I'm sorry.  Waiting for his response
2:17 PM  7   regarding what?
2:17 PM  8           THE DEFENDANT:  Regarding what had happened and what
2:18 PM  9   his conclusions were stemming from the trial, at least with
2:18 PM 10   regards to that.  And I asked him, I notified him to please do
2:18 PM 11   the PSI with me.  He never responded to any of my messages or my
2:18 PM 12   daughters' messages.
2:18 PM 13           THE COURT:  All right. One moment, Ms. Ruiz.  Are you
2:18 PM 14   saying that since the trial ended you have not met with Mr. Buck
2:18 PM 15   regarding the Presentence Investigation Report?
2:18 PM 16           THE DEFENDANT:  No, not at all.
2:18 PM 17           THE COURT:  Have you spoken to him since the end of the
2:18 PM 18   last trial when the jury adjudicated you guilty?
2:19 PM 19           THE DEFENDANT:  No.  In fact, he did not show up to do
2:19 PM 20   the PSI with me, but I had a duty to do the PSI and so I did it
2:19 PM 21   alone.  And then my daughter sent him an e-mail to please
2:19 PM 22   explain to us a little bit more because this situation was new
2:19 PM 23   for us.  I couldn't tell you the exact quote from the e-mail,
2:19 PM 24   but he did make it very clear to us that if we did not have the
2:19 PM 25   money to pay him, because I don't have money to pay him, he was

```
2:20 PM   1   not going to appear.  Regarding that reply, my daughters have
2:20 PM   2   that e-mail and there was even reference to my daughters'
2:20 PM   3   professional licenses saying that he was going to sue them and
2:20 PM   4   that it was going to look very badly with regards to their
2:20 PM   5   professional career if we did not pay that money.
2:20 PM   6           Your Honor, that is all I have to say to you with
2:20 PM   7   regards to that attorney.  I would like to apologize to you for
2:21 PM   8   having said yes at the time, but in the end things turned out
2:21 PM   9   differently.  And with regards to the question that you've just
2:21 PM  10   asked me:  No, I do not want to continue with that attorney.  I
2:21 PM  11   knew that I was going to be here alone, but I came here alone
2:21 PM  12   out of respect for you and for everyone who has gathered here
2:21 PM  13   and with my family, who are fully standing by me.  I gave you my
2:21 PM  14   word that I would be here at 2 p.m., and here I am.
2:21 PM  15           THE COURT:  All right.  Ms. Ruiz, I think you are
2:22 PM  16   asking me to appoint an attorney to represent you from this
2:22 PM  17   point forward; is that correct, ma'am?
2:22 PM  18           THE DEFENDANT:  Yes, Your Honor.  I didn't want to ask
2:22 PM  19   you directly, but I left it in your hands.
2:22 PM  20           THE COURT:  All right.  There are some questions I need
2:22 PM  21   to ask you, Ms. Ruiz, in order to determine if you are eligible
2:22 PM  22   for appointment of an attorney.  I need to discuss with you the
2:22 PM  23   assets that you may have, so the first question is do you have
2:22 PM  24   any bank accounts?
2:22 PM  25           THE DEFENDANT:  Yes, I have a bank account related to
```

```
2:22 PM   1    my job.
2:23 PM   2              THE COURT:  And what is the balance in your bank
2:23 PM   3    account?  Or accounts?
2:23 PM   4              THE DEFENDANT:  I currently have employees that I need
2:23 PM   5    to pay, and I am paid on the 20th of each month and it is about
2:23 PM   6    $6,000, the amount of the check.  Basically, Your Honor, by the
2:23 PM   7    time I am done paying the employees as well as paying for my
2:23 PM   8    living costs, there's no money left over.
2:23 PM   9              THE COURT:  So let me be clear.  So do you have a
2:24 PM  10    business that you're operating?  All right.  Just listen to my
2:24 PM  11    questions, Ms. Ruiz.  So you have a business, and I think from
2:24 PM  12    some of the letters it's some type of house cleaning or business
2:24 PM  13    cleaning business?
2:24 PM  14              THE DEFENDANT:  It is a cleaning for businesses, but
2:24 PM  15    after this issue started I no longer have the business.
2:24 PM  16              THE COURT:  So the question I'm asking you now is how
2:24 PM  17    much money is in your bank account?
2:24 PM  18              THE DEFENDANT:  In my bank account there's only $13 in
2:24 PM  19    my bank account.
2:24 PM  20              THE COURT:  All right.  Are you working?
2:25 PM  21              THE DEFENDANT:  Yes, I was working.  I had been
2:25 PM  22    working.
2:25 PM  23              THE COURT:  No, are you working now?
2:25 PM  24              THE DEFENDANT:  No, not currently.
2:25 PM  25              THE COURT:  And how are you supporting yourself?
```

```
2:25 PM   1              THE DEFENDANT:  I am living at my brother's house and
2:25 PM   2    my brother and my daughters are the ones who are helping me, and
2:25 PM   3    my family, they're the ones who are supporting me.
2:25 PM   4              THE COURT:  Is this your brother's house in Miami,
2:25 PM   5    Florida or in North Carolina?
2:25 PM   6              THE DEFENDANT:  In North Carolina.
2:25 PM   7              THE COURT:  Do you own any stocks or bonds?
2:25 PM   8              THE DEFENDANT:  No.
2:26 PM   9              THE COURT:  Any real estate such as a home, rental
2:26 PM  10    property, land, et cetera?
2:26 PM  11              THE DEFENDANT:  No.
2:26 PM  12              THE COURT:  Do you have any expectation of receiving
2:26 PM  13    money from any source other than family members providing for
2:26 PM  14    your support?
2:26 PM  15              THE DEFENDANT:  No.
2:26 PM  16              THE COURT:  You mentioned owing money or at least in
2:26 PM  17    some of the letters owing money to Mr. Buck.  Do you have an
2:26 PM  18    outstanding balance owed to Mr. Buck for his representation?
2:26 PM  19              THE DEFENDANT:  (Speaking Spanish).
2:26 PM  20              THE COURT:  All right.  And how much is the balance
2:27 PM  21    that you owe Mr. Buck?  Are you suggesting, Ms. Ruiz, that your
2:27 PM  22    daughter has the answer and you don't know how much you owe?  Is
2:27 PM  23    that because she's been making the payments?
2:27 PM  24              THE DEFENDANT:  No, the issue is that via e-mail
2:27 PM  25    Mr. Buck has been communicating with my daughters and myself,
```

```
2:27 PM   1    but there's an 18% interest rate and so it's a figure that I
2:27 PM   2    couldn't tell you what it is exactly.
2:27 PM   3              THE COURT:  All right.  Someone in the audience raised
2:27 PM   4    their hand.  Would you come forward please, ma'am?
2:27 PM   5              THE DEFENDANT:  Thank you, Your Honor.
2:27 PM   6              THE COURT:  Come forward to the lectern and give us
2:27 PM   7    your name.
2:27 PM   8              DR. GRETTER BENITEZ:  Hi.  My name is Dr. Gretter
2:28 PM   9    Benitez.
2:28 PM  10              THE COURT:  All right.  Thank you.  So I understand
2:28 PM  11    that you have some information about the debt that has been
2:28 PM  12    incurred by your mother, Ms. Ruiz?
2:28 PM  13              DR. GRETTER BENITEZ:  That's correct, sir.
2:28 PM  14              THE COURT:  Can you explain what that scenario is?
2:28 PM  15              DR. GRETTER BENITEZ:  Sure.  The most recent invoice is
2:28 PM  16    standing at over $40,000.
2:28 PM  17              THE COURT:  And what was the initial debt?  The initial
2:28 PM  18    fee charged?
2:28 PM  19              DR. GRETTER BENITEZ:  Yeah, the first payment was
2:28 PM  20    $10,000.
2:28 PM  21              THE COURT:  But what was the original fee charged?
2:28 PM  22              DR. GRETTER BENITEZ:  I don't know, sir, because it
2:28 PM  23    keeps adding up.  Every time I look at it, quite frankly it is
2:28 PM  24    incrementally larger and so there's not really --
2:28 PM  25              THE COURT:  You don't know what the initial retainer
```

| | | |
|---|---|---|
| 2:28 PM | 1 | agreement was? |
| 2:28 PM | 2 | DR. GRETTER BENITEZ: Sure. The initial retainer was |
| 2:28 PM | 3 | $10,000 that we all paid for, my sister and I and my uncle. |
| 2:29 PM | 4 | THE COURT: So the original fee was $10,000. |
| 2:29 PM | 5 | DR. GRETTER BENITEZ: Yes, and then he asked for |
| 2:29 PM | 6 | another 15,000 for trial. |
| 2:29 PM | 7 | THE COURT: All right. |
| 2:29 PM | 8 | DR. GRETTER BENITEZ: That we were unable -- |
| 2:29 PM | 9 | THE COURT: One moment. One moment. I'm trying to |
| 2:29 PM | 10 | understand. Sometimes lawyers quote the totality of the fee in |
| 2:29 PM | 11 | the beginning. So you're saying the initial payment was 10,000 |
| 2:29 PM | 12 | and an additional 15,000 if the case went to trial; is that |
| 2:29 PM | 13 | correct? |
| 2:29 PM | 14 | DR. GRETTER BENITEZ: Correct. |
| 2:29 PM | 15 | THE COURT: All right. So that's $25,000. Was there |
| 2:29 PM | 16 | supposed to be more? Like an appeal or what have you? |
| 2:29 PM | 17 | DR. GRETTER BENITEZ: No, Your Honor. Unfortunately |
| 2:29 PM | 18 | I've also asked in plenty of e-mails where the charges are |
| 2:29 PM | 19 | coming from, and I have received no response. I've offered a |
| 2:29 PM | 20 | payment plan, I've received no response. |
| 2:29 PM | 21 | THE COURT: So the initial amount owed was $25,000 and |
| 2:30 PM | 22 | you're suggesting that it's beyond 25,000 because of interest. |
| 2:30 PM | 23 | Am I clear? |
| 2:30 PM | 24 | DR. GRETTER BENITEZ: I assume so. Again, I have left |
| 2:30 PM | 25 | multiple messages and e-mails and I have not gotten a response, |

```
2:30 PM   1    I've been completely ignored.
2:30 PM   2             THE COURT:  All right.  All right.  Thank you very
2:30 PM   3    much, ma'am.
2:30 PM   4             DR. GRETTER BENITEZ:  Absolutely.
2:30 PM   5             THE COURT:  All right.  Very well.  I find that Ms.
2:30 PM   6    Ruiz is indigent and the court will appoint an attorney.
2:30 PM   7             THE DEFENDANT:  Thank you, Your Honor.
2:30 PM   8             THE COURT:  I've been thinking ahead about this
2:30 PM   9    actually, and the Court is going to appoint Mr. Quintero who
2:30 PM  10    just happens to be in the courtroom.  Mr. Quintero is a good
2:30 PM  11    lawyer.  So he's going to be representing you.  I'm going to
2:31 PM  12    continue this matter for sentencing and continue to follow your
2:31 PM  13    bond requirements, Ms. Ruiz.  I know that you incurred expenses
2:31 PM  14    and as I stated, I am issuing an order to show cause as to why
2:31 PM  15    Mr. Buck shouldn't be held in contempt.  And so in that regard,
2:31 PM  16    I want to know how much your plane ticket was coming to Florida
2:31 PM  17    from North Carolina.
2:31 PM  18             THE DEFENDANT:  So the ticket, I don't know exactly
2:31 PM  19    because when I took the ticket automatically, so since I had to
2:32 PM  20    show here on the 26th since you told me.  I came with my mom
2:32 PM  21    from North Carolina, and for both of us was 300 some.
2:32 PM  22             THE COURT:  Is that a round-trip ticket, is that for
2:32 PM  23    each person or what?
2:32 PM  24             THE DEFENDANT:  It is a one-way and it was for both of
2:32 PM  25    us, my mom and I.
```

```
2:32 PM   1              THE COURT:  And so in theory would be about the same to
2:32 PM   2    go back to North Carolina?
2:32 PM   3              THE DEFENDANT:  Exactly, Your Honor.
2:32 PM   4              THE COURT:  Now, do you have family members here who
2:32 PM   5    traveled from out of town to be at this hearing?
2:33 PM   6              THE DEFENDANT:  Yes.  My brother, the oldest one who
2:33 PM   7    came with his wife with whom I'm staying, also my daughter and
2:33 PM   8    my youngest daughter.
2:33 PM   9              THE COURT:  All right.  Mr. Quintero, I want you to
2:33 PM  10    briefly confer and I want to know how much their tickets cost
2:33 PM  11    and if there are hotel expenses, I want to know generally what
2:33 PM  12    the expenses are because I'm going to consider this when I
2:33 PM  13    determine what sanctions, assuming the Court imposes sanctions,
2:33 PM  14    against Mr. Buck.
2:33 PM  15              MR. QUINTERO:  Yes, Your Honor, I'm happy to do that.
2:33 PM  16    I would also add as counsel for Ms. Ruiz that the Court can also
2:33 PM  17    incorporate the Tjoflat Rule?
2:33 PM  18              THE COURT:  Well, that's --
2:33 PM  19              MR. QUINTERO:  I bring it to your attention.
2:33 PM  20              THE COURT:  I can do that when I get Mr. Buck in front
2:33 PM  21    of me.
2:33 PM  22              MR. QUINTERO:  Exactly.
2:33 PM  23              THE COURT:  And I already plan to.
2:33 PM  24              MR. QUINTERO:  Because I am alarmed, as this Court is
2:33 PM  25    alarmed --
```

```
2:33 PM   1              THE COURT:  All right.
2:33 PM   2              MR. QUINTERO:  -- from what I've read in the docket in
2:34 PM   3   this case.  But I will -- if you'll allow me to confer with the
2:34 PM   4   family members about -- and give you an answer later on today --
2:34 PM   5              THE COURT:  That's fine.
2:34 PM   6              MR. QUINTERO:  -- I'm happy to do that.
2:34 PM   7              THE COURT:  That's fine, and frankly there are
2:34 PM   8   apparently some e-mails, and so I want you to discuss that with
2:34 PM   9   your client and if you all are agreeable you could submit those
2:34 PM  10   to the Court.
2:34 PM  11              MR. QUINTERO:  I will do that.  I will do that.
2:34 PM  12              Judge, just so the Court is aware, as I advised your
2:34 PM  13   courtroom deputy yesterday, I've got some time issues.
2:34 PM  14              THE COURT:  What do you want, Mr. Quintero?  What are
2:34 PM  15   you asking me for in terms of resetting this matter?
2:34 PM  16              MR. QUINTERO:  Yes.  Yes.  Because I noticed on the
2:34 PM  17   docket, I've discussed this with counsel for the Government,
2:34 PM  18   there was a PSR submitted, he didn't even go to the PSR
2:34 PM  19   interview.  No objections to the PSR have been filed, no motion
2:34 PM  20   for downward departure or variance, I had a 10-minute
2:35 PM  21   conversation with counsel for the Government, and the amount of
2:35 PM  22   the loss may be 30 million, but the profit to this lady was
2:35 PM  23   between 30 and $40,000.  That is enough in and of itself to
2:35 PM  24   submit a motion for downward departure and --
2:35 PM  25              THE COURT:  Mr. Quintero, what are you asking for?
```

```
2:35 PM  1              MR. QUINTERO:  I need at least the middle of January,
2:35 PM  2      Judge, because I am --
2:35 PM  3              THE COURT:  No more, Mr. Quintero.  We're going to set
2:35 PM  4      it for the middle of January.
2:35 PM  5              MR. QUINTERO:  Thank you, Judge.
2:35 PM  6              And just so the Court is aware, I'm starting a
2:35 PM  7      one-month trial in front of Judge Moore November 7th and I had a
2:35 PM  8      trip to Europe that I had to cancel so I'm already in hot water
2:35 PM  9      as it is.
2:35 PM 10              THE COURT:  And I know Judge Moore is going.
2:35 PM 11              So Government, you've heard the inquiry.  Is there
2:35 PM 12      anything you want to say in this regard?  I've had a lot of
2:36 PM 13      problems with Mr. Buck, and I'm going to issue an order to show
2:36 PM 14      cause and I'm going to ask you to appear whenever I set it.  I'm
2:36 PM 15      going to wait until I get a little more information from the
2:36 PM 16      Defendant.  So anything in addition thereto that you would like
2:36 PM 17      to say?
2:36 PM 18              MS. GURSKIS:  Not at this time, Your Honor.  Thank you.
2:36 PM 19              THE COURT:  All right.  I would like for you to
2:36 PM 20      cooperate with Mr. Quintero in trying to get him up to date.
2:36 PM 21              Mr. Quintero, if you want to order the transcript of
2:36 PM 22      the prior proceedings, I will execute the order.
2:36 PM 23              MR. QUINTERO:  Absolutely.  Anything you can give me to
2:36 PM 24      help me catch up that would be great.
2:36 PM 25              THE COURT:  All right.  Just file your motion and we'll
```

```
2:36 PM   1    act accordingly.
2:36 PM   2              MR. QUINTERO:  Your Honor, can you advise the Probation
2:36 PM   3    Officer to provide me a copy of all PSRs, addendums and final
2:36 PM   4    addendums.
2:37 PM   5              THE COURT:  Yes.  Yes.  There were some changes, and
2:37 PM   6    frankly I was curious as to whether Mr. Buck had caused those
2:37 PM   7    changes, but I understand it was the probation officer who
2:37 PM   8    received additional information to amend the presentence report.
2:37 PM   9    So they will provide you with the PSI, the addendums and
2:37 PM  10    anything else that you need.
2:37 PM  11              MR. QUINTERO:  I think I can resolve a lot of these
2:37 PM  12    issues, Your Honor, given the time.  What I can't tell you now
2:37 PM  13    is whether I can resolve any trial issues until I can review a
2:37 PM  14    transcript of the proceedings but --
2:37 PM  15              THE COURT:  Well, we'll order that.  You submit the
2:37 PM  16    form, the CJA form, and then I will sign it and have the court
2:37 PM  17    reporter prepare the transcript.
2:37 PM  18              MR. QUINTERO:  Wonderful.  Thank you, Your Honor.
2:37 PM  19              THE COURT:  All right.  Is there anything else anyone
2:37 PM  20    else has to say?
2:38 PM  21              All right.  Now, Ms. Ruiz, I appreciate the fact that
2:38 PM  22    you appeared as you said you would.  There are some things in
2:38 PM  23    the presentence report and in the letters from your daughters
2:38 PM  24    that cause me some concern, and it has to do with your mental
2:38 PM  25    health.  And so please continue to honor the conditions of your
```

```
2:38 PM   1    bond and cooperate with Mr. Quintero.  You're going to find a
2:38 PM   2    marked difference in dealing with Mr. Quintero than Mr. Buck, I
2:38 PM   3    can tell you that now.  But I want you to be careful about this
2:38 PM   4    anxiety issue and all of those problems because I want you here
2:38 PM   5    when I set the next hearing.  This is very important.  Do you
2:38 PM   6    understand?
2:39 PM   7              THE DEFENDANT:  It would be so, Your Honor.
2:39 PM   8              THE COURT:  All right.  All right.  Thank you all very
2:39 PM   9    much.  I frankly have never had anything like this in 30 years,
2:39 PM  10    but there's a first time for everything.
2:39 PM  11              So we are in recess, have a good evening and afternoon
2:39 PM  12    everyone.
2:39 PM  13              MR. QUINTERO:  Thank you, Your Honor.
2:39 PM  14              MS. GURSKIS:  Thank you, Your Honor.
2:39 PM  15              THE DEFENDANT:  Thank you, Your Honor.
2:39 PM  16              (PROCEEDINGS CONCLUDED)
2:39 PM  17                         C E R T I F I C A T E
               I certify that the foregoing is a correct transcript from the
2:39 PM  18    record of proceedings in the above-entitled matter.
2:39 PM  19    11/21/2022              /s/ Dawn M. Savino, R.P.R., C.R.R.
               Date                        DAWN M. SAVINO, R.P.R., C.R.R.
2:39 PM  20
2:39 PM  21
         22
         23
         24
         25
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**