**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**21-CR-20566-GRAHAM/MCALILEY**

**UNITED STATES OF AMERICA**

**v.**

**JAROSLAVA RUIZ,**

          **Defendant.**

_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**NOTICE OF SUPPLEMENTAL FILING IN SUPPORT OF HER OBJECTIONS**
**TO THE PSR AND THE REQUEST FOR DOWNWARD DEPARTURE/VARIANCE**

**I.      INTRODUCTION**

Defendant Jaroslava Ruiz was convicted of conspiracy to commit health care fraud and wire fraud as well as nine counts of health care fraud for her role in a scheme that resulted in approximately $26,650,292 in false and fraudulent claims submitted to private insurance companies, of which the insurance companies paid approximately $6,209,577.  ECF 170–3 at 3. During the scheme, Defendant Ruiz worked as an office administrator at sham physical therapy clinics, recruited patient recruiters, instructed other employees and patient recruiters on how to fabricate medical records, facilitated the submission of false and fraudulent claims to insurance companies, and paid beneficiaries kickbacks for visiting the sham clinics and signing stacks of undated forms.  ECF No. 170 at 13.  The PSR properly calculated her total offense level at 31 (accounting for a base offense level of 7, a total loss amount of between $25 million and $65 Million resulting in a 22-point enhancement, and a 2-point enhancement for acting as a manager or supervisor in the criminal activity).

The defendant has now filed a supplemental motion in support of a motion for downward departure/variance asking this Court to: (i) ignore established Eleventh Circuit caselaw related to calculating loss pursuant to U.S.S.G. §2B1.1(b)(1)(L) and (ii) ignore facts supporting a role enhancement, pursuant to U.S.S.G. §3B1.1, in order to qualify the defendant for a two-level variance available to certain offender's with zero criminal history points, pursuant to not-yet effective U.S.S.G. §4C1.1. This Court should reject both arguments, find that the PSR properly calculated the loss amount based on the intended loss, and find that the PSR properly applied a role enhancement under §3B1.1.

## II.   ARGUMENT

### a.   The PSR Properly Calculated the Loss Amount as $25,650,292 Based on the Intended Loss

Defendant Jaroslava Ruiz was a willful participant in the conspiracy from on or about September 11, 2017, through the end of the conspiracy period, and, as a result of her participation in the scheme, the defendant and her coconspirators submitted approximately $25,650,292 in false and fraudulent claims to private insurance companies for physical therapy services. ECF No. 170 at 11–13; ECF No 170–3 at 3.

Defendant challenges the intended loss enhancement and argues that the commentary in Section 2B1.1(b)(1) creates an intended loss enhancement not included in the text of the guideline. *See* ECF No. 174 at 1–2. However, the PSR properly calculated the loss amount, pursuant to Section 2B1.1(b)(1)(L), as the intended loss, $25,650,292, the total amount the sham physical therapy clinics billed private insurance companies. This loss results in a 22-level increase to the Sentencing Guidelines calculation. Defendant objects to this calculation and contends that the loss should be the "actual loss"—the amount private insurance companies paid on the claims ($7,707,627)—resulting in only an 18-level increase. Her argument has no merit and has been

2

routinely rejected throughout the district.

To support her argument that the Court should use the "actual" rather than "intended" loss amount, Defendant cites to a Third Circuit case, *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022). (D.E. 429 at 4-5.) First, *Banks* is not controlling in this Circuit and is contrary to Eleventh Circuit case law. The Eleventh Circuit has long interpreted loss in the context of Section 2B1.1 to include intended loss. *See, e.g.*, *United States v. Moran*, 778 F.3d 942, 973–74 (11th Cir. 2015); *United States v. Massam*, 751 F.3d 1229, 1232 (11th Cir. 2014); *United States v. Patterson*, 595 F.2d 1324, 1326–27 (11th Cir. 2010); *United States v. Willis*, 560 F.3d 1246, 1250 (11th Cir. 2009); *United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291–92 (11th Cir. 2001); *United States v. Toussaint*, 84 F.3d 1406, 1407–08 (11th Cir. 1996). Courts have continued to apply intended loss after the ruling in *Banks*. *See, e.g.*, *United States v. Hernandez*, No. 22-10406, 2023 WL 309571, at *2 (11th Cir. Jan. 19, 2023); *Lantigua v. United States*, No. 3:16-CR-125-TJC-PDB, 2023 WL 2303050, at *13 (M.D. Fla. Mar. 1, 2023). The Court should reject Defendant's argument and apply a 22-level increase for loss.

Further, nothing in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)—the Supreme Court precedent upon which *Banks* relies—dictates that the term "loss" should be limited to "actual loss." Indeed, *Kisor* did not interpret the Sentencing Guidelines at all. In *Kisor*, the U.S. Supreme Court considered but rejected a challenge to *Auer*/*Seminole Rock* deference, a long-standing practice of deferring to agencies' reasonable readings of "genuinely ambiguous" regulations. *See* 139 S. Ct. at 2408. As the *Kisor* Court explained, first, "a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Id.* at 2415. Then, "[i]f genuine ambiguity remains," a court must ensure that "the agency's reading [is] reasonable," meaning that it "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* at 2415-

16 (quotations and citations omitted). Critically, *Kisor* did not purport to overrule the "long line of precedents" that rely on *Auer/Seminole Rock* deference, including *Stinson v. United States*, 508 U.S. 36 (1993), which considered the deference owed to the Guidelines' commentary. *See id.* at 2422. Indeed, *Kisor* expressly denied any intent to "cast doubt on many settled constructions of rules" and inject "instability into so many areas of law." *Id.* Indeed, as the Eleventh Circuit explained (post-*Banks*) in *United States v. Corker*, No. 22-10192, 2023 WL 1777195 (11th Cir. Feb. 6, 2023), *Stinson and Kisor "govern how much deference to give to Guidelines commentary,"* not *"whether binding precedent holds that Application Note 3(A) . . . [is] inconsistent with the Guidelines' text . . . ." Id.* at *4 (upholding on plain error review the use of intended rather than actual loss).

About three years after *Kisor*, the Eleventh Circuit upheld the use of "intended loss" under Section 2B1.1(b)(1) in *United States v. Moss*, 34 F.4th 1176 (11th Cir. 2022). In so doing, the Eleventh Circuit "explicitly rejected the argument that Application Note 3(A) to § 2B1.1, instructing courts to calculate 'the greater of actual loss or intended loss,' contradicts the plain meaning of the Guidelines' text." *Corker*, 2023 WL 1777195, at *4 (citing *Moss*, 34 F.4th at 1190)). In *Moss*, a defendant convicted of conspiracy to commit health fraud and several counts of health care fraud challenged the district court's determination that his loss amount was the amount billed to government insurance programs as opposed to what was actually paid. *Id.* at 1190. Defendant primarily argued that he had rebutted the presumption that his loss amount was the amount billed because he knew that the programs would not reimburse the full amounts he submitted. *Id.* at 1191. Affirming the district court's loss calculation, the Eleventh Circuit stated that even if the defendant adequately rebutted the presumption, the "pecuniary harm that the defendant *purposely sought* to inflict . . . includes intended pecuniary harm that would have been

impossible or *unlikely* to occur." 34 F.4th at 1191 (quoting § 2B1.1 cmt. n.3(A)(ii)) (emphasis in original) (internal quotation marks omitted).  The Eleventh Circuit went on to note that:

> [w]hat makes it unlikely the actual loss will be as high as the full amount of the fraudulent insurance claim is that the claim exceeds the insured value, and insurance companies rarely if ever slip up and pay the excessive amount. The hypothetical defendant in that commentary example knew it was 'unlikely' the claim would be paid in full, but he submitted the full amount anyway with the greedy hope that he would mistakenly be paid the full amount.

*Id.*

Defendant's reliance on *United States v. Dupree*, 25 F.4th 1341 (11th Cir. 2022), also is misplaced. ECF No. 174 at 2.  *Dupree* is distinguishable from this case in that it interprets different language in a different chapter of the Guidelines, and it provides no basis for discarding the definition of "loss."  In fact, the reasoning in *Dupree* can be applied in support of the Guidelines' definition of "loss." In *Dupree*, the Eleventh Circuit held that the Guidelines commentary cannot "expand" the meaning of "unambiguous sentencing Guidelines." 25 F.4th 1341 at 1273, 1274–78. Here, the natural reading of the term "loss" in context is that it covers what the Guidelines commentary says it does, and the term does not unambiguously exclude intended loss.

Accordingly, this Court has routinely sentenced health care fraud defendants—including Defendant Ruiz's co-defendants—based on the intended loss.   This Court should reject Defendant's efforts to carve intended loss out of the definition of loss and find the total amount billed ($256,650,292) is the applicable loss amount.

### b.   The PSR Properly Determined that Defendant Ruiz Recruited Coconspirator Jean Lago, and, therefore, is Properly Assessed a Managerial Role

The PSR properly concluded that Defendant Ruiz was a manager and recommends a 2-point role enhancement, pursuant to §3B1.1(c).  ECF No. 170 at 15.  At trial, cooperating witness Jean Lago testified that, although she was previously engaged in a separate scheme to submit

5

fraudulent claims to her insurance company, she met Defendant Ruiz when attempting to collect

from a clinic that billed her insurance. TT1 [1] at 68. Ms. Lago stated:

> [Defendant Ruiz] basically proposed how about she—she asked me where I worked
> at. I told her that I was a manager at Simply, and she basically proposed to me how
> would I like to go into business with her, and their clinic. And to become a patient
> recruiter for them.

TT1 at 68–69. Ms. Lago further testified that the defendant informed her that her clinic would pay

$3,500 for each patient recruited and Defendant Ruiz suggested that Ms. Lago, as the recruiter,

pay $2,000 to each recruited patient and to keep the rest. *Id*. at 69. Ms. Lago explained that

Defendant Ruiz told her that "if the patients would find out, it would cause them not to call the

health insurance, and that they were one of the highest paid ones." *Id*.

Based primarily on this testimony, the PSR properly concluded that Defendant Ruiz

recruited Ms. Lago into this conspiracy—the charged conspiracy involving the submission of false

and fraudulent claims to private insurance through Ramirez Rehab, Long Life, AA Ortiz, and Perez

Medical. The fact that Ms. Lago was involved in a prior, separate scheme involving other clinics

does not negate the finding that Defendant Ruiz recruited Ms. Lago into this scheme. As a result,

the PSR properly applied the 2-point enhancement under §3B1.1(c).

Defendant Ruiz has already lodged an objection to this finding and contended that Ms.

Lago perjured herself with regard to the above-referenced testimony. ECF NO. 170–3 at 2–3. The

accusations of perjury, however, are unfounded and, based on the verdicts, the jury clearly credited

Ms. Lago's testimony (and rejected the defendant's testimony). Indeed, the United States

Probation Office has already considered the defendant's objection as to this issue and nonetheless

found that the enhancement applied. PSR 170–3 at 2–3.

---

[1] "TT1" refers to the trial transcript from Day One of trial on August 1, 2022.

The defendant now rehashes the same objection it has already lodged and asks this Court to ignore these facts in order to allow Defendant Ruiz to qualify for a variance under the not-yet effective U.S.S.G. §4C1.1. Although this provision does not take effect until November 1, 2023, once effective, the Court must consider ten factors to determine if the defendant qualifies for a 2-point downward variance. Defendant Ruiz, as a manager of the criminal activity, does not qualify. *See* Amendments to the Sentencing Guidelines (Preliminary), dated April 5, 2023, at 80–81 (https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf) (last visited July 31, 2023). As a result, in the event the Court finds (as the PSR concluded) that Defendant Ruiz is subject to an enhancement under §3B1.1, then she does not qualify for the 2-point downward variance under §4C1.1.[2]

### III.     CONCLUSION

For the foregoing reasons, the Court should reject the defendant's request for a downward departure/variance, find that the loss amount equates to the intended loss ($26,650,292), and find that the defendant is subject to a role enhancement for recruiting coconspirator Jean Lago.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY


GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION

---

[2] Although the provision is not effective until November 1, 2023, in cases which the defendant otherwise qualifies for the downward variance, the government will not oppose a request for the variance so long as the defendant agrees in writing and/or on the record not to later seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the amendment, if made retroactive.

By:     */s/ Patrick J. Queenan*
Patrick J. Queenan (No. A5502715)
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 875-0326
patrick.queenan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2023, I served and filed the forgoing document with the

Clerk of the Court via ECF.

By:     */s/ Patrick J. Queenan*
Patrick J. Queenan